UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA MARIE NELSON,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>Defendant. | No.  2:19-cv-01382 AC<br><br><br><br>**ORDER** |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401-34.[1]  For the reasons that follow, plaintiff's motion for summary judgment will be GRANTED, and defendant's cross-motion for summary judgment will be DENIED.  The matter will be reversed and remanded to the Commissioner for an immediate award of benefits.

////

////

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); <u>Bowen v. City of New York</u>, 476 U.S. 467, 470 (1986).

1

I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB on October 3, 2016. Administrative Record ("AR") 176-84.[2] The disability onset date was alleged to be January 31, 2016. Id. The application was disapproved initially and on reconsideration. AR 15. On May 15, 2018, ALJ Trevor Skarda presided over the hearing on plaintiff's challenge to the disapprovals. AR 31 – 54 (transcript). Plaintiff, who appeared with her counsel James Pea, was present at the hearing. AR 31. Linda Berkley, a Vocational Expert ("VE"), also testified at the hearing. Id.

On September 5, 2018, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. § 416(i), 423(d). AR 15-25 (decision), 26-30 (exhibit list). On May 24, 2019, after receiving Exhibit 13B (Request for Review from Representative Charles Binder) and 22E (Representative Brief) as an additional exhibit, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-5 (decision and additional exhibit list).

Plaintiff filed this action on July 22, 2019. ECF No. 1; see 42 U.S.C. § 405(g). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 5, 10. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 14 (plaintiff's summary judgment motion, brief at ECF No. 15), 18 (Commissioner's opposition to the summary judgment motion), 19 (plaintiff's reply).

II. FACTUAL BACKGROUND

Plaintiff was born in 1979, and accordingly was, at age 36, a younger person under the regulations, when she filed her application.[3] AR 55. Plaintiff has at least a high school education, and can communicate in English. AR 59.

III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards."

---

[2] The AR is electronically filed at ECF Nos. 13-3 to 13-13 (AR 1 to AR 506).
[3] See 20 C.F.R. § 404.1563(c) ("younger person").

Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001), as amended on reh'g (Aug. 9, 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

2006) (quoting Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

////

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146, n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2021.
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity since January 31, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. [Step 2] The claimant has the following severe impairments: degenerative disc disease, bilateral osteoarthritis of the knees, bilateral shoulder tendinosis, rotator cuff tear, and morbid obesity (20 CFR 404.1520(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. [Residual Functional Capacity ("RFC")] After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, and crawl; occasionally reach overhead bilaterally; and must avoid concentrated exposure to pulmonary irritants and concentrated exposure to operation or control of dangerous moving machinery as well as unprotected heights.
>
> 6. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. [Step 5] The claimant was born [in 1979] and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).
>
> 8. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 31, 2016, through the date of this decision (20 CFR 404.1520(g)).

AR 17-25

As noted, the ALJ concluded that plaintiff was "not disabled" under Title II of the Act. AR 25.

## VI.  ANALYSIS

Plaintiff alleges that the ALJ erred by (1) failing to properly weigh the medical evidence, and (2) failing to properly evaluate the plaintiff's subjective testimony, and further argues that (3) the ALJ was not properly appointed pursuant to the Appointments Clause of Article II of the United States Constitution.  AR 15 at 2.  Because the undersigned finds that the ALJ did err by failing to properly credit plaintiff's treating physician, orthopedic surgeon Gary Wisner, M.D., and that this error requires remand for an immediate award of benefits, only that point is addressed here.

   A. The Medical Evidence

The ALJ considered the medical opinions of (1) treating orthopedist Dr. Gary Wisner, (2) consultative examiner Dr. Satish Sharma, (3) State Agency evaluating physician Dr. K. Rudito, and (4) State Agency evaluating physician Dr. G. Taylor.  AR 19-23.  On March 1, 2016, following a three-week hospitalization for acute respiratory failure and pneumonia (AR 295-306), plaintiff established care with Shiraz Buhari, M.D., who diagnosed her with morbid obesity, type 2 diabetes mellitus with hyperglycemia, and pain in both shoulders.  AR 482.  Dr. Buhari referred plaintiff for physical therapy and an orthopedic evaluation.  Id.  She established care with Dr. Wisner, an orthopedic surgeon, on March 21, 2016.  AR 1585.

a. <u>The Treatment and Opinion of Dr. Wisner</u>

Upon referral, Dr. Wisner evaluated plaintiff; the exam revealed shoulder pain, decreased range of motion, positive impingement sign, painful arc, and subacromial bursa tenderness in the shoulder bilaterally. AR 1586. A second examination on April 6, 2016 revealed unchanged findings in the bilateral shoulders, as well as findings of lumbar spine tenderness at L5-S1. AR 1584. Plaintiff was prescribed Voltaren and Tylenol. AR 1583. On April 20, 2016, plaintiff again saw Dr. Wisner for persistent bilateral shoulder pain with good and bad days, and pain radiating into her feet and ankles bilaterally. AR 1580. Voltaren was not helpful, and an examination revealed unchanged findings from the previous exam. AR 1580-81. Plaintiff had MRIs taken of both shoulders on April 28, 2016. AR 1578.

Plaintiff was again seen by Dr. Wisner on May 11, 2016, at which time she reported new orthopedic symptoms, bilateral knee pain that radiated to her feet in addition to continued bilateral shoulder pain. AR 1578. Upon review of the MRI studies, Dr. Wisner recommended arthroscopic shoulder surgery. AR 1578. The next month, plaintiff reported to Dr. Wisner that her shoulder pain radiated into her hands with good and bad days, and an orthopedic examination showed decreased range of motion, tenderness in the subacromial bursa, painful arc, positive impediment sign in the shoulders bilaterally, positive straight leg raise, and lumbar paraspinal tenderness at L5-S1. AR 156-77. At a July 1, 2016 appointment with Dr. Wisner, plaintiff reported popping, clicking, locking, giveaway weakness, and tightness in her right knee, in addition to continued pain in her shoulders, neck, hands, and back. AR 1574-75. The orthopedic exam revealed decreased range of motion, subacromial bursa tenderness, a positive impingement sign in the shoulders bilaterally, decreased range of motion and mild swelling in the bilateral knees, and positive straight leg raise test. AR 1575. An orthopedic examination later that month revealed decreased range of motion, a positive impingement sign, painful arc in the bilateral shoulders, positive straight leg raise test, and tenderness in the lumbar paraspinal muscles at L5-S1. AR 1572-73. An August 12, 2016 orthopedic exam revealed a positive impingement sign and painful arc, decreased range of motion in the bilateral shoulders, decreased range of motion in

////

1  the bilateral knees, positive straight leg raise test, and tenderness in the lower lumbar paraspinal
2  muscles. AR 1570-71.

3  A follow up on August 31, 2016 showed no significant change in Ms. Nelson's orthopedic
4  condition. AR 1568-1569. Dr. Wisner noted plaintiff's readiness for arthroscopic surgery and
5  prescribed Zofran, Keflex, and Percocet. AR 1568. An August 31, 2016, an MRI of the right
6  knee showed a small undersurface tear of a partially extruded medial meniscus body, small
7  parameniscal cyst extending superiorly and inferiorly from the medial joint line, possible distal
8  pes anserine bursitis and possible infrapatellar bursitis, mild discoid variant lateral meniscus,
9  small joint effusion, slightly greater than physiologic, and a near-full thickness chondral defect
10 along the medial femoral condyle. AR 475. An MRI of the left knee demonstrated possible mild
11 infrapatellar bursitis and a mild discoid variant in the lateral meniscus. AR 476. An MRI of the
12 lumbar and thoracic spine on October 24, 2016 demonstrated mild lower lumbar facet
13 hypertrophy (AR 479) and minimal thoracic spondylitic change. AR 480. Dr. Wisner reviewed
14 the MRIs at the August 31, 2016 exam. AR 1568.

15 In an Arthritis Impairment Questionnaire summarizing plaintiff's conditions, dated
16 January 10, 2017, Dr. Wisner reported treating plaintiff since March 21, 2016 for bilateral
17 shoulder impingement syndrome and osteoarthritis of the bilateral shoulders and knees, seeing her
18 monthly. AR 510. Dr. Wisner wrote that findings and objective diagnostics tests supporting the
19 diagnoses and assessment included limited range of motion, joint tenderness, joint instability,
20 crepitus, and muscle weakness in the shoulders; joint swelling and crepitus in the knees; cervical
21 and lumbar spine muscle spasm; and, the results of MRI studies of the shoulders and knees. AR
22 510- 512. Dr. Wisner stated that plaintiff has chronic, daily pain in the shoulders, knees, and
23 back, precipitated and/or aggravated by prolonged daily activities. AR 513. Dr. Wisner
24 concluded plaintiff is not a malingerer. AR 512. Dr. Wisner stated that the symptoms and
25 limitations detailed in the questionnaire were present since March 21, 2016. AR 516. Dr. Wisner
26 opined that in an 8-hour workday, Ms. Nelson could sit for two hours total, stand/walk for 2 hours
27 total, and must get up every 30 minutes when sitting to move around. AR 514. She could
28 lift/carry 10 pounds frequently and up to 20 pounds occasionally. Id. Plaintiff had significant

8

limitations reaching, handling, and fingering; she could occasionally use the arms for reaching, including overhead, bilaterally, and frequently use the bilateral upper extremities to grasp, turn, and twist objects and for fine manipulations. AR 515. Plaintiff's symptoms were frequently severe enough to interfere with attention and during an 8-hour workday, she would need to take unscheduled breaks to rest every hour, each break lasting an average of 20 minutes. Id. Dr. Wisner estimated Ms. Nelson would be absent from work more than three times a month as a result of her impairments or treatment. AR 516.

    b. <u>Consultative Examiner Opinion</u>

  Dr. Satish K. Sharma provided a medical evaluation of plaintiff at the request of the Social Security Administration on April 11, 2017. AR 517. Dr. Sharma was not provided with medical records or objective imaging to review in connection with the examination. Id. Plaintiff reported to Dr. Sharma that she had persistent, worsening pain in the lower back that radiated to her legs with intermittent numbness, pain in the shoulders and knees, intermittent numbness in the lower extremities, and diabetes. AR 517-518. The physical examination revealed tenderness to palpation over the superior lateral aspect of both shoulders, pain on abduction at 110 degrees in the right shoulder and 130 degrees in the left shoulder, tenderness to palpation over the medial joint and prepatellar region in the knees bilaterally, pain on flexion of the right knee at a 100 degrees and left knee at 135 degrees, tenderness to palpation over the lumbar spine and the paravertebral region, pain on forward flexion at 60 degrees and extension at 20 degrees, and ambulation with a limp on the right lower extremity and an inability perform toe and heel walking. AR 519. Dr. Sharma diagnosed low back pain secondary to musculoskeletal strain, bilateral shoulder pain secondary to tendonitis, bilateral knee pain, diabetes, and high cholesterol. AR 520. She opined plaintiff could push, pull, lift and carry 10 pounds frequently in 20 pounds occasionally, stand/walk 6 hours a day with normal breaks, sit for 6 hours a day with normal breaks, occasionally bend and stoop, and occasionally reach over head above the shoulder with both arms. Id.

////

////

      c.  Non-Examining Source Opinions

Agency consultant G. Taylor, M.D., reviewed plaintiff's file on October 31, 2016. AR 61-64. A second consultant, allergist K. Rudito, M.D., reviewed the file on May 23, 2017. AR 75-78. Each opinion was rendered before the opinions from the treating orthopedist were entered into the record; one was rendered before the date of Dr. Wisner's report was completed. AR 516. The consultative examiners found that plaintiff could perform a range of light work; they agreed that she could lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk for 6 hours each in an 8-hour day; frequently climb ramps and stairs, frequently balance, and occasionally climb ladders, ropes, and scaffolds, stoop, kneel, crouch, and crawl; occasionally reach overhead with both arms; and avoid concentrated exposure to hazards and pulmonary irritants. AR 62-63.

B. Principles Governing the ALJ's Consideration of Medical Opinion Evidence

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.[4] Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995), as amended (Apr. 9, 1996).

> Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships. As such, the ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons. Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.

Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (internal citations omitted). "The general rule is that conflicts in the evidence are to be resolved by the Secretary and that his determination must be upheld when the evidence is susceptible to one or more rational interpretations." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

However, when the ALJ resolves conflicts by rejecting the opinion of an examining

---

[4] There have been recent updates to the rules on medical sources; this section of the code applies to claims filed before March 27, 2017. See 20 C.F.R. § 404.1527. Plaintiff's claims were filed prior to 2017, and are therefore not impacted by the changes.

physician in favor of the conflicting opinion of another physician (including another examining physician), he must give "specific and legitimate reasons" for doing so. Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298–99 (9th Cir. 1999) ("Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record.").

C. The ALJ Erred in Assigning Little Weight to Dr. Wisner's Opinion

The ALJ accorded partial weight to Dr. Wisner's opinion, stating that significant weight was appropriate as to the two-hour stand/walk limitation because "this is consistent with the relatively mild objective findings on imaging[.]" AR 23. The ALJ gave less weight to Dr. Wisner's conclusion that plaintiff could carry 20 pounds occasionally and 10 pounds frequently, and partial weight to the limitation to occasionally lifting overhead, without any particular explanation. Id. However, the ALJ found that the record did not support the limitation as to all reaching, finding such a global limitation inconsistent with lift/carry restrictions. Id. The ALJ reasoned that

> Dr. Wisner appears to be sympathetic to the claimant and to place considerable weight on her subjective complaints. I accord very little weight to other portions of the opinion because they are unexplained and unsupported by the record. For example, given the relatively mild findings regarding the claimant's lumbar and thoracic spine, the limitation of sitting only two hours in an eight-hour workday seems extreme. As to his various "off work" notes, I accord little weight because they are conclusory.

Id. No further explanation was given.

The ALJ erred in multiple respects. First, it is plain error to discredit a treating physician with a conclusory statement that the opinion was biased by the physician's sympathy for his or her patient. "This skepticism of a treating physician's credibility flies in the face of clear circuit precedent." Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998). The Ninth Circuit has specifically rejected an ALJ's conclusion, unsupported by clear evidence, that a treating physician was biased by sympathy toward his patient. Haulot v. Astrue, 290 F. App'x 53, 54 (9th Cir. 2008). The ALJ here likewise fails to identify any specific indication that Dr. Wisner relied more heavily on plaintiff's statements, out of sympathy for her, than on his objective observations.

11

1   Sympathy, without more, does not establish bias.

2   Second, the ALJ failed to identify any specific and legitimate reasons for not fully
3   crediting Dr. Wisner.  "A treating physician's opinion on disability, even if controverted, can be
4   rejected only with specific and legitimate reasons supported by substantial evidence in the
5   record."  Reddick, 157 F.3d at 725.  The ALJ's broad conclusion that Dr. Wisner's assessment is
6   "unexplained and unsupported by the record" is insufficient, particularly where Dr. Wisner had,
7   at the time of his evaluation, seen plaintiff at least monthly for nearly 10 months and his extensive
8   notes were in the record along with medical imaging upon which he relied.  It is true of course
9   that an ALJ is not required to accept a conclusory physician opinion that is unsupported by
10  clinical findings.  Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986).  However, the
11  undersigned does not find that Dr. Wisner's opinion was "brief and conclusory."  The opinion
12  itself provides multiple clinical findings, discussed above, and specifies that MRIs of the shoulder
13  and knee support the diagnosis.  AR 510-12.  The opinion is further supported in the record by
14  Dr. Wisner's extensive visit notes.  The ALJ does not explain how or why the findings with
15  respect to plaintiff's lumbar spine are too mild to support Dr. Wisner's sitting limitations, instead
16  making the conclusory assertion that the limitation "seems extreme."  AR 23.  The ALJ erred in
17  rejecting the opinion, which is supported by the extensive record discussed above, and should
18  therefore have been fully credited.

19      D.  Crediting Dr. Wisner's Opinion Necessitates Remand for an Award of Benefits

20  As discussed, the ALJ erred in rejecting Dr. Wisner's opinion and that error was not
21  harmless. Accordingly, the court is authorized "to 'revers[e] the decision of the Commissioner of
22  Social Security, with or without remanding the cause for a rehearing.'"  Treichler v. Comm'r of
23  Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014).  "[W]here the record has been developed
24  fully and further administrative proceedings would serve no useful purpose, the district court
25  should remand for an immediate award of benefits."  Benecke v. Barnhart, 379 F.3d 587, 593 (9th
26  Cir. 2004).

27  More specifically, the district court should credit evidence that was rejected during the
28  administrative process and remand for an immediate award of benefits if (1) the ALJ failed to

provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Benecke, 379 F.3d at 593 (citing Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000)).

Under the second step in the remand analysis, the court must "review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015), as amended (Feb. 5, 2016) (quoting Treichler, 775 F.3d at 1101). Under the third step in this analysis, the court should remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal quotation marks omitted).

In this case, if Dr. Wisner's opinions were credited as true, plaintiff would necessarily be found disabled under the applicable regulations. Dr. Wisner opined that in an 8-hour workday, Ms. Nelson could sit for two hours total, stand/walk for 2 hours total, and must get up every 30 minutes when sitting to move around. AR 514. She could lift/carry 10 pounds frequently and up to 20 pounds occasionally. Id. Plaintiff had significant limitations reaching, handling, and fingering; she could occasionally use the arms for reaching, including overhead, bilaterally, and frequently use the bilateral upper extremities to grasp, turn, and twist objects and for fine manipulations. AR 515. Plaintiff's symptoms were frequently severe enough to interfere with attention and during an 8-hour workday, she would need to take unscheduled breaks to rest every hour, each break lasting an average of 20 minutes. Id. Dr. Wisner estimated Ms. Nelson would be absent from work more than three times a month as a result of her impairments or treatment. AR 516.

It is clear from the record that if Dr. Wisner's opinion is properly credited, plaintiff must necessarily be found disabled. In response to a hypothetical question, the VE testified that a person limited to two hours of standing and two hours of sitting in a workday would be precluded from all sedentary work. AR 52. Even more clearly, the VE stated that "somebody who misses

1  three to four days a week -- a month on a consistent basis cannot maintain employment in the
2  open labor market based on my review of employment policies." Id.  The VE also concluded that
3  a person who needs breaks beyond the typical three provided by employers, including one break
4  of one hour to lie down, would be precluded from work.  AR 53.  Because the VE and the ALJ
5  found that no jobs were available for plaintiff when Dr. Wisner's opinion was credited, plaintiff is
6  disabled under the Act.

7  Where the above steps are satisfied, this court must exercise its discretion in determining
8  whether to remand for further proceedings, or for the immediate calculation and award of
9  benefits.  Dominguez, 808 F.3d at 407 (if disability finding would necessarily follow if
10 discredited evidence were credited as true, "the district court may exercise its discretion to
11 remand the case for an award of benefits").  If, despite satisfying the above steps, the "record as a
12 whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of
13 the Social Security Act," the court should remand for further proceedings.  Burrell, 775 F.3d at
14 1141 (quoting Garrison v. Colvin, 759 F.3d 995, 1021 (9th Cir. 2014)).  However, the court
15 would be "abus[ing] its discretion by remanding for further proceedings where the credit-as-true
16 rule is satisfied and the record afforded no reason to believe that [the plaintiff] is not, in fact,
17 disabled."  Garrison, 759 F.3d at 1021.

18 Here, the record leaves no doubt that the plaintiff is disabled within the meaning of the
19 Act.  The VE made clear findings that work is precluded if Dr. Wisner's limitations are credited.
20 AR 52-53.  Nothing in the record contradicts Dr. Wisner's findings; in fact, the overall record
21 supports them.  Accordingly, the court finds that plaintiff is disabled within the meaning of the
22 Act and no further fact finding is necessary.

23                          VII.  CONCLUSION
24 For the reasons set forth above, IT IS HEREBY ORDERED that:
25   1. Plaintiff's motion for summary judgment (ECF No. 14), is GRANTED;
26   2. The Commissioner's cross-motion for summary judgment (ECF No. 17), is DENIED;
27   3. This matter is REMANDED to the Commissioner for an immediate award of benefits;
28 and

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: July 7, 2020

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE